IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSE ARIEL LOPEZ HERNANDEZ,        )
                                        )
        Petitioner,               )
                                         )
        v.                     )      1:26-cv-689 (LMB/WEF)
                                         )
U.S. IMMIGRATION AND CUSTOMS       )
   ENFORCEMENT, et al.,           )
                                       )
        Respondents.            )

ORDER

Petitioner Jose Ariel Lopez Hernandez ("Lopez Hernandez"), a native and citizen of Honduras, has filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since March 11, 2026. Specifically, he alleges that his detention violates his due process rights under the Fifth Amendment (Count I) and the Immigration and Nationality Act (Count II).

Lopez Hernandez is currently detained at the Riverside County Jail, which is within this Court's jurisdiction. He has sued Todd M. Lyons, the Acting Director of ICE; Markwayne Mullin, the DHS Secretary; and Todd Blanche, the Acting Attorney General (collectively, "the federal respondents").[1] For the reasons discussed in this Order, the Court finds that Lopez Hernandez's detention is unlawful. Accordingly, his Petition will be granted as to Count I, and the federal respondents will be ordered to release him from custody immediately.

---

[1] Acting Attorney General Todd Blanche and Secretary Markwayne Mullin have automatically replaced their predecessors under Federal Rule of Civil Procedure 25(d).

I.

According to the Declaration of Charles M. Byrne, Assistant Field Office Director, Lopez Hernandez is a 30-year-old native and citizen of Honduras who first entered the United States in February 2016. [Dkt. No. 4-1] at ¶¶ 5-6. Customs and Border Protection ("CBP") agents encountered him shortly after his entry into the United States and, after a brief interview, determined that Lopez Hernandez had no legal right to enter or remain in the United States and processed him for expedited removal pursuant to 8 U.S.C. § 1225(b)(1). Id. ¶ 6. On March 2, 2016, DHS served Lopez Hernandez with a Form I-860, Notice and Order of Expedited Removal and took him into civil immigration custody pending removal. Id. ¶ 7. On April 28, 2016, Lopez Hernandez was removed from the United States to Honduras.[2] Id. ¶ 8.

It is unclear when Lopez Hernandez re-entered the United States, but on November 8, 2018, he was convicted of the misdemeanor offense of driving while intoxicated in violation of Virginia Code § 18.2-266. Id. ¶ 9. That same day, Lopez Hernandez was arrested by the Fairfax County's Sheriff's Office on a federal warrant and was detained at Fairfax County Adult Detention Center. Id. ICE agents encountered Lopez Hernandez at that detention center, identified that he was subject to a final order of removal, and served him with a Form I-871, Reinstatement of Prior Order. Id. ¶ 10. On November 9, 2018, he was charged in this district with illegally re-entering the United States in violation of 8 U.S.C. § 1326(a) and was taken into custody by the United States Marshals Service pending those criminal proceedings. Id. ¶ 11; see 1:18-cr-400. On December 6, 2018, he was convicted of illegally re-entering the United States, sentenced to time served, and transferred into immigration custody. [Dkt. No. 4-1] at ¶ 12.

---

[2] Lopez Hernandez's Petition alleges that "Lopez Hernandez has been present in the United States since 2016 and has never departed," [Dkt. No. 1] at ¶ 13; however, that allegation appears to be inaccurate, and counsel is reminded that he has a duty to disclose to the Court facts that might be relevant to the resolution of a petitioner's claims for relief.

On December 14, 2018, Lopez Hernandez was referred to U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear interview after he claimed fear of returning to Honduras. Id. at ¶ 13. On January 2, 2019, USCIS found that Lopez Hernandez had a reasonable fear of returning to Honduras and submitted a Form I-863, Notice of Referral to the Immigration Judge, which placed Lopez Hernandez in withholding only proceedings. Id. ¶ 14. On March 27, 2019, Lopez Hernandez had a bond hearing before an Immigration Judge and was released on a $7,000 bond.[3] Id. ¶ 15. On November 21, 2022, an Immigration Judge granted him withholding of removal from Honduras. Id. ¶ 16. According to Lopez Hernandez's reply brief, the Immigration Judge granted withholding of removal after finding that Lopez Hernandez had "met his burden to show that he had suffered past persecution in his country on account of being a member of the . . . LGBTQ community." [Dkt. No. 5] at 4.

On September 7, 2023, ICE cancelled Lopez Hernandez's bond and issued an Order of Supervision. [Dkt. No. 4-1] at ¶ 17. The Order of Supervision included provisions requiring Lopez Hernandez to "provide ICE with written copies of requests to Embassies or Consulates requesting the issuance of a travel document" and "written responses from the Embassy or Consulate regarding [his] request." [Dkt. No. 7-2] at 3. The Order of Supervision also required that Lopez Hernandez "not associate with know [sic] gang members, criminal associates, or be associated with any such activity." Id.

On September 8, 2025, Lopez Hernandez reported to ICE's Washington Field Office for a scheduled check-in and was informed that, as a condition of his release, "he [was] required to

---

[3] Lopez Hernandez's March 2019 bond hearing was consistent with this Court's opinion in Diaz v. Hott, 297 F. Supp. 3d 618, 623 (E.D. Va. 2018), which held that § 1226(a) applies to the detention of noncitizens subject to reinstated removal orders during the pendency of withholding-only proceedings. That decision has since been overruled. Johnson v. Guzman Chavez, 594 U.S. 523 (2021).

apply for travel documents to three countries before his next [check-in] on March 11, 2026." [Dkt. No. 4-1] at ¶ 18. On March 11, 2026, Lopez Hernandez reported for the scheduled check-in. Id. ¶ 19. During the check-in, ICE "questioned Petitioner on his attempts to obtain travel documents from three different countries" and determined that he had failed to apply for any travel documents.[4] [Dkt. No. 7-1] at ¶ 10. Additionally, ICE "noticed and questioned [Lopez Hernandez] on his tattoos." Id. at ¶ 9. Although Lopez Hernandez stated that the tattoos "have no meaning," ICE believed that the tattoos "are associated with gangs" and "concluded that [he] may present a public safety threat." Id. Based on these purported violations of his Order of Supervision, ICE served Lopez Hernandez with a Notice of Revocation of Release and placed him into civil immigration custody. [Dkt. No. 4-1] at ¶ 19. Although Lopez Hernandez was given an informal opportunity to respond to the reasons for the revocation of the Order of Supervision, he declined to provide a statement. Id. That same day, he was served with a Notice of Removal to Mexico. Id. ¶ 20. Following the adjudication of the instant Petition, ICE plans to "transfer [Lopez Hernandez] to [the] Southwest Border facility and present Petitioner to Mexico for acceptance." Id. ¶ 22.

## II.

The detention and removal of noncitizens following final orders of removal is governed by 8 U.S.C. § 1231. Under § 1231(a), DHS "shall detain" and physically remove noncitizens from the United States within a 90-day "removal period." After the 90-day period, DHS may

---

[4] Lopez Hernandez's reply alleges that this is a mischaracterization of the record and that he "made substantial, good-faith efforts to comply" with his Order of Supervision. [Dkt. No. 5] at ¶¶ 16–20. Specifically, he visited the embassies of Spain, Canada, and China to request the ability to apply for asylum or obtain travel documents; however, all three countries turned him away or told him that he was ineligible. Id. ¶ 17. He reported these efforts to ICE and provided documentation at his March 11, 2026 check-in, id., including the letter he received from the Canadian embassy, [Dkt. No. 5-1] at 2.

release a noncitizen subject to terms of supervision, 8 U.S.C. § 1231(a)(6); however, if DHS chooses to release an individual, the agency may re-detain that individual under certain circumstances, including when the noncitizen "violates [a] condition of release," 8 C.F.R. § 241.4(l)(2)(ii).

"In authorizing such post-removal-period detention, the statute does not specify a time limit on how long DHS may detain an alien in the post-removal period." Castaneda v. Perry, 95 F.4th 750, 756 (4th Cir. 2024) (cleaned up). The Supreme Court, however, has recognized that "serious constitutional concerns" would arise if § 1231 were interpreted to allow for "indefinite detention." Zadvydas v. Davis, 533 U.S. 678, 682 (2001). In Zadvydas, the Supreme Court construed the statute to "contain an implicit limit on terms of detention," Dong Lu v. Noem, et al., No. 1:26-cv-390, Dkt. No. 8, at 4 (E.D. Va. Mar. 2, 2026), "the application of which is subject to federal-court review," Zadvydas, 533 U.S. at 682. Under Zadvydas, a noncitizen's detention pursuant to § 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701. If a petitioner makes that showing, the burden shifts to the government to rebut that showing. Id. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

In their opposition, the federal respondents argue that Lopez Hernandez's detention is lawful because (1) he is subject to a final order of removal; (2) his detention, which has lasted for approximately one month, is presumptively reasonable under Zadvydas; and (3) he has failed to demonstrate that "removal is not significantly likely in the foreseeable future." [Dkt. No. 4] at 1. The Court disagrees. "As other courts in this Circuit have recognized, the Supreme Court in Zadvydas did not announce a categorial bar on challenging detention prior to six months, but

rather a rebuttable presumption that 180 days of detention is reasonable." Bautista Serpas v. Simon, et al., No. 1:25-cv-2369, Dkt. No. 15, at 7 (E.D. Va. Feb. 3, 2026); Portela-Hernandez v. Trump, No. 1: 25-cv-1633, 2026 WL 74042, at *8 (D. Md. Jan. 9, 2026) ("The Zadvydas presumption is rebuttable, and if [Petitioner] can prove that his removal is not reasonably foreseeable, then he can overcome that presumption.").

Based on the record, the Court concludes that because Lopez Hernandez has sufficiently demonstrated that there "is no significant likelihood of removal in the reasonably foreseeable future," he has rebutted the presumption that his detention is reasonable. Zadvydas, 533 U.S. at 701. Although Lopez Hernandez's order of removal became final over seven years ago in November 2018, he has not been removed and has not been detained since being released on bond in 2019, which was continued by the 2023 Order of Supervision. [Dkt. No. 4-1] at ¶¶ 10, 17. Critically, the federal respondents provide no explanation for what, if any, removal efforts were made during those seven years. As another jurist of this Court has found, "it can be inferred [from the lack of explanation] that ICE attempted—but failed to remove [petitioner] in that time period," which "casts severe doubt" on the likelihood of his removal in the reasonably foreseeable future. Miralda-Lopez v. Lyons, et al., No. 1:26-cv-317, Dkt. No. 8, at 5 (E.D. Va. Mar. 11, 2026) (internal citations and quotations omitted).

Furthermore, although the federal respondents now allege that they are "prepared to move forward with removal to Mexico," [Dkt. No. 4] at 2, they have provided little evidence in support of their assertion that Lopez Hernandez's removal is reasonably foreseeable. Byrne's Declaration merely states that ICE would "immediately . . . transfer Petitioner to Southwest Border facility and present Petitioner to Mexico for acceptance," [Dkt. No. 4-1] at ¶ 22; however, Byrne "describes only a general procedure for preparing to deport [Lopez Hernandez] to Mexico at an unspecified time," Joseph v. Rhoden, No. 3:25-cv-1579, 2026 WL 262589, at *3

6

(M.D. Fla. Feb. 2, 2026). "There is no evidence that ICE has attempted to obtain a Mexican travel document for [Lopez Hernandez], that Mexico intends to accept [Lopez Hernandez], or that ICE has communicated with Mexico regarding [Lopez Hernandez] at all." Id. Based on the evidence presented, the Court finds that the federal respondents have failed to show that there is a significant likelihood petitioner will be removed in the reasonably foreseeable future.

Moreover, to the extent that the federal respondents argue that Lopez Hernandez's detention is lawful because he has violated the conditions of his release, the Court does not find these assertions to be meritorious.[5] As discussed above, the federal respondents allege that Lopez Hernandez violated a condition of his Order of Supervision because he failed to apply for travel documents to three countries before his check-in on March 11, 2026. [Dkt. No. 4-1] at ¶¶ 18–19. Lopez Hernandez has directly rebutted these allegations: In his reply brief, he asserts that he complied with his Order of Supervision by visiting the embassies of Spain, Canada, and China to request travel documents, and at his March 11, 2026 check-in, he "reported these efforts to ICE and provided documentation." [Dkt. No. 5] at 4; [Dkt. No. 5-1] at 1–2. In response to the Court's April 2, 2026 Order requiring additional briefing and documents, the federal respondents provided no evidence to refute Lopez Hernandez's assertions.[6] See [Dkt. No. 7]; accord K.J.R.D. v. Wofford, No. 1:26-cv-610, 2026 WL 821001, at *10 (E.D. Cal. Mar. 25, 2026).

The federal respondents' assertion that Lopez Hernandez's tattoos made him a possible public safety threat because ICE suspected that the tattoos were affiliated with gang membership

---

[5] Although the federal respondents' opposition focuses on the legality of Lopez Hernandez's detention under Zadvydas, it also includes allegations that Lopez Hernandez has violated the conditions of his Order of Supervision.

[6] In their response to Court's Order, the federal respondents merely repeat their allegations that Lopez Hernandez "stated that he did not apply for any travel documents" at his March 11, 2026 check-in and do not respond to petitioner's arguments that he explained his efforts to obtain travel documents and provided documentation of those efforts. [Dkt. No. 7] at ¶ 6.

is also too speculative. Lopez Hernandez's March 11, 2026 Notice of Revocation of Release states that his release was revoked pursuant to 8 C.F.R. § 241.4(*l*) because he "may/could pose a public safety risk due to possible gang affiliated tattoo(s)." [Dkt. No. 7-2] at 8. This assertion is unsupported by the record, especially in light of Lopez Hernandez's statement that the tattoos have no significance and the federal respondents' failure failed to proffer any corroborating evidence of petitioner's purported gang affiliation. See Medina v. DHS, 408 F. Supp. 3d 1224, 1231–33 (W.D. Wash. 2019) (rejecting the federal respondents' argument that petitioner's tattoo indicated gang affiliation "[w]ithout corroborating evidence" as "arbitrary and capricious"). Accordingly, upon review of the record, the Court finds that the federal respondents have not shown that Lopez Hernandez failed to comply with the conditions of his release.

## III.

For the reasons stated above, the Court finds that Lopez Hernandez's continued detention is unlawful under Zadvydas and violates his due process rights. Accordingly, the Petition, [Dkt. No. 1], is GRANTED as to Count I, and it is hereby

ORDERED that the federal respondents release Lopez Hernandez, with all his personal property, by 4:00 PM on Friday, April 24, 2026 pursuant to the Order of Supervision under which Lopez Hernandez was released on September 7, 2023; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Lopez Hernandez except upon a concrete showing of imminent removal to a qualifying, consenting country, or if he violates any condition of supervision.

8

The Clerk is directed to enter judgment in Lopez Hernandez's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 23rd day of April, 2026.

Alexandria, Virginia

/s/

Leonic M. Brinkema
United States District Judge

9